PEOPLE v SCHULTZ

PEOPLE v WEIDEMAN

Docket Nos. 30870, 30871. Submitted June 23, 1978, at Detroit.—
Decided September 6, 1978.

Mark D. Schultz and Glen G. Weideman were charged with
armed robbery. Prior to trial both defendants confessed to the
robbery and the confessions were used at trial. At trial, each
defendant had a separate attorney and neither attorney pre-
sented any defense witnesses and each rested his case at the
close of the people's proofs. During his closing argument, the
attorney for defendant Schultz stated that his client and the
other defendant had committed the crime charged. The defend-
ants were convicted of armed robbery, St. Clair Circuit Court,
Ernest F. Oppliger, J. The defendants appeal, claiming, among
other things, that the statements by Schultz's attorney de-
prived them of their constitutional right to a jury trial. *Held:*

The remarks by defendant Schultz's attorney did deprive the
defendants of their right to a trial by jury. For a defense
attorney unequivocally to plead the defendants guilty to the
highest crime with which they were charged, without the

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 458, 459, 484–496.

Degree of mental competence, required of accused who pleads
guilty, sufficient to satisfy requirement, of Rule 11 of Federal
Rules of Criminal Procedure, that guilty plea be made voluntarily
and with understanding. 31 ALR Fed 375.

Court's duty to advise or admonish accused as to consequence of
plea of guilty, or to determine that he is advised thereof. 97
ALR2d 549.

[2] 21 Am Jur 2d, Criminal Law § 484 *et seq.*

[3] 21 Am Jur 2d, Criminal Law §§ 584, 585.

[4] 21 Am Jur 2d, Criminal Law § 309 *et seq.*

Incompetency of counsel chosen by accused as affecting validity of
conviction. 74 ALR2d 1390.

Modern status of rules as to that in federal court of effective
representation by counsel. 26 ALR Fed 218.

[5] 5 Am Jur 2d, Appeal and Error § 867.

[6] 75 Am Jur 2d, Trial §§ 683–685, 818–820.

consent of the defendants, was so offensive to the maintenance of a sound judicial process that it cannot be regarded as harmless.

Reversed and remanded.

1. CRIMINAL LAW—PLEAS OF GUILTY—DEFENDANT'S CONSENT—PLEA ENTERED BY DEFENSE COUNSEL.

Only a defendant can consent to a plea of guilty; it is not within the province of a defendant's lawyer to decide unilaterally upon the guilt of his client and then plead the defendant guilty.

2. CRIMINAL LAW—PLEAS OF GUILTY—TRIAL STRATEGY.

Throwing oneself upon the mercy of the jury is a legitimate trial strategy in a criminal trial; however, the strategy may not include an unequivocal statement by defense counsel that his client committed the highest crime with which he was charged, although an attorney may well admit to his client's guilt of a lesser included offense in hopes that due to his candor the jury will convict of the lesser offense instead of the greater.

3. CRIMINAL LAW—PLEAS OF GUILTY—PLEA IN THE ALTERNATIVE— RIGHT TO TRIAL BY JURY.

It is proper for a defense attorney to plead in the alternative; he may tell the jury that a defendant comes before them clothed with a presumption of innocence and that to convict him they must find him guilty beyond a reasonable doubt, he may then relate any other facts or points of law which may be favorable to his client; after doing this the attorney may state that if upon reviewing the evidence the jury thinks the defendant is guilty, then it should still consider the defendant's youth and lack of criminal record before passing judgment; however, where defense counsel simply declares that his client is guilty, the remarks effectively deprive the defendant of his right to a trial by jury.

4. CRIMINAL LAW—ASSISTANCE OF COUNSEL—EFFECTIVE ASSISTANCE— STANDARD.

The standard to determine whether a defendant had effective assistance of counsel in a criminal trial is that defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

5. CRIMINAL LAW—PLEAS OF GUILTY—MAINTENANCE OF SOUND JUDICIAL SYSTEM—PLEA ENTERED BY DEFENSE COUNSEL—HARMLESS ERROR.

It is so offensive to the maintenance of a sound judicial process

for a defense attorney unequivocally, without the defendant's consent, to plead his client guilty to the highest crime with which the defendant is charged, that it can never be regarded as harmless error.

6. CRIMINAL LAW—INSTRUCTIONS TO JURY—CAUTIONARY INSTRUCTIONS —CONFESSIONS—INTERLOCKING CONFESSIONS.

A trial court should give to the jury a cautionary instruction which states the manner in which the jury can use confessions of two defendants where there are two defendants on trial for the same offense and both have confessed and where the confessions are interlocking and therefore their use is proper (CJI 4:1:02).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter E. Deegan,* Prosecuting Attorney, and *Peter R. George,* Chief Appellate Attorney, for the people.

*John A. Lydick,* Assistant State Appellate Defender, and *Gail Rodwan,* Research Attorney, for defendants on appeal.

Before: R. M. MAHER, P. J., and J. H. GILLIS and McGREGOR,* JJ.

PER CURIAM. Defendants were convicted by a jury of armed robbery contrary to MCL 750.529; MSA 28.797. The convictions arose out of a robbery of the Wadhams Branch of the Commercial Savings Bank of St. Clair on November 24, 1975. Three employees of the bank witnessed the robbery and testified similarly to its occurrence. Co-defendant Glen Weideman was identified by the employees as one man. The other robber wore a brownish ski mask and a parka and carried a brown knapsack in which the money was placed.

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

The two men were described as about 17 or 18 years old.

Following the robbery, the two suspects were reported heading northwest on foot into a wooded area along a riverbank. A deputy proceeded to that area and within a short time came upon defendant Schultz. The deputy detained Schultz and told him that he was being stopped in reference to a bank robbery. Although Schultz had no incriminating evidence on his person, the deputy placed him under arrest and read him his *Miranda*[1] rights. Continuing the conversation with Schultz, the deputy informed him of the seriousness of his position. At that point in the colloquy, Schultz stated that he did not want to talk any further.

Codefendant Weideman was apprehended not far from and shortly after defendant Schultz by another deputy. On Weideman's person was found a knapsack containing $94,290, a ski mask, a green Army Jacket and a blue parka. Both defendants confessed to the robbery and the confessions were used at trial.

Each defendant had a separate attorney. Neither attorney presented any defense witnesses, however, and each rested his case at the close of the people's proofs. Defendants raise a number of issues on appeal but we find the treatment of one to be dispositive. Defendants argue that the following remarks made by defendant Schultz's court appointed attorney during his closing argument deprived them of their constitutional right to a jury trial.

"We have here a situation that deserves some

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

thought on your part. There is no question as to what happened here. These boys did commit a serious crime however as Mr. McColl has said, they are 17 years old. I believe that Mr. Schultz, my client, became 18 thirty days prior to this incident.

"I think what their whole problem is is that they, like all of the youngsters, today, watch a lot of television. There is one FBI Agent who said, I think, that Mr. Weideman said he had a dream to rob a bank. Now, certainly they are not professional bank robbers.

* * *

"It's easy to rob banks today because you get all of the instructions on your television and I think these youngsters are a victim of this situation and maybe we are all at fault.

"However, as Mr. McColl has said, his client is 17, my client is barely 18, and that you do have a choice of either convicting them of armed robbery, which is the most serious charge, here, however the Court will instruct you that there are other charges you can find them guilty of.

"I think you must take into consideration their age, the fact that they are not professionals, that they did a very foolish thing. It could have happened to any kid at any time and that with that in mind nothing more can be said.

"There is no question they did it, and by the way, both Mr. McColl and myself are Court appointed to represent these youngsters. They are entitled to all of the representation they can get. Maybe in this particular case not much because we do not have a defense but we do rely on you to take into consideration their age, the fact that they are not professionals, that they have a life to live and every son in the country or every mother in the country who has a son is going to think that some day their child will learn a lesson and will go straight.

"There is no evidence here that they haven't in the past. They made this one mistake and this is what you are going to decide, their future."

These remarks by counsel were tantamount to

pleading defendants guilty. It is axiomatic that only the defendant can consent to a plea of guilty. It is not within the lawyer's province to decide unilaterally upon the guilt of his client and then plead him guilty.

The prosecution contends that the evidence against the defendants was overwhelming and that the remarks were merely part of a trial strategy to play upon the sympathy of the jury. While throwing oneself upon the mercy of the jury is a legitimate trial strategy, this strategy does not encompass an unequivocal statement by defense counsel that his client committed the highest crime with which he was charged. An attorney may well admit guilt of a lesser included offense in hopes that due to his candor the jury will convict of the lesser offense instead of the greater. See, *People v Fabian,* 77 Mich App 52; 257 NW2d 673 (1977), *People v Dickerson,* 242 Cal App 2d 73; 51 Cal Rptr 113 (1966). In the present case, however, defense counsel did not concede guilt on a lesser offense. Instead he conceded guilt on the primary offense.

An attorney may also plead in the alternative. He may tell the jurors that defendant comes before them clothed with a presumption of innocence and that to convict him they must find him guilty beyond a reasonable doubt. He may then relate any other facts or points of law which may be favorable to his client. After doing this, the attorney may state that if upon reviewing the evidence the jury thinks defendant is guilty, then it should still consider defendant's youth and lack of a criminal record before passing judgment. Defense counsel in this case did not plead in the alternative. Instead he simply declared that his client was guilty. These remarks therefore effectively deprived defendants of their right to a trial by jury.

The test of effective assistance of counsel was set forth by our Supreme Court in *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976).

" 'Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interests, undeflected by conflicting considerations.' " *Garcia* at 264, quoting *Beasley v United States,* 491 F2d 687, 696 (CA 6, 1974).

ABA Disciplinary Rule 7-106(C)(4), states that a lawyer shall not "assert his personal opinion as to * * * the guilt or innocence of an accused".

This Court is well aware that the evidence against defendants was overwhelming and that they would in all probability have been convicted without the gratuitous remarks made by counsel. This Court concludes, however, that unequivocally pleading defendants guilty to the highest crime with which they are charged without their consent is "so offensive to the maintenance of a sound judicial process that it never can be regarded as harmless". *People v Wichman,* 15 Mich App 110, 116; 166 NW2d 298 (1968).

Since this case must be retried, two other alleged errors deserve limited attention. First, although defendants' confessions are interlocking and therefore their use is proper, the trial court should nonetheless give the cautionary instruction contained in CJI 4:1:02 which states the manner in which the jury can use these confessions. Secondly, the prosecutor and the police officers are reminded that they may not comment upon the defendant's silence after his arrest.

Reversed.