*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DENNIS CARLTON EVANS,

        Defendant-Appellant.

UNPUBLISHED
September 22, 2025
9:03 AM

No. 370665
Macomb Circuit Court
LC No. 2022-001819-FC

Before: LETICA, P.J., and RICK and BAZZI, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of two counts of first-degree premediated murder, MCL 750.316; possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f; possessing a controlled substance with intent to deliver (possession with intent to deliver), MCL 333.7401(2)(a)(*iii*); and three counts of carrying a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. Defendant was sentenced to life imprisonment for each first-degree-murder conviction, three to five years' imprisonment for felon-in-possession, 9 to 20 years' imprisonment for possession-with-intent-to-deliver, and five years' imprisonment for each felony-firearm conviction. The felony-firearm sentences were to be served consecutive to the two first-degree-murder and felon-in-possession convictions. We affirm.

## I. FACTUAL BACKGROUND

Defendant's convictions arose out of the murder of Dorian Mitchell and Christine Davis in Eastpointe, Michigan, on January 27, 2022. An eyewitness, Felissa Marshall, testified at trial that she saw defendant sitting in his parked car when she exited the apartment complex where they both lived. Marshall stated that she took a short trip to a nearby gas station. When she returned, she saw defendant driving quickly out of the apartment complex's parking lot. Mitchell was lying face down on the cement in the middle of a turnaround, and Davis was bleeding nearby. Davis asked Marshall to call 911 and told her that defendant was the shooter. A 911 call played at trial indicated that multiple gunshots were fired with a pause between them. Mitchell was pronounced

-1-

dead at the scene. Davis died in the hospital several months later as a result of complications from her gunshot wounds.

Officers searched defendant's apartment and found heroin and digital scales. Residue found on the scales tested positive for fentanyl. Following the shooting, defendant fled to San Antonio, Texas, but was arrested and extradited to Michigan. At a *Walker*[1] hearing held following defendant's extradition, a Texas police officer testified that, upon hearing that Davis survived the shooting, defendant stated, "ain't [sic] that a bitch, she should've died too." Upon his return to Michigan, defendant was charged with first-degree murder, assault with intent to commit murder (AWIM), MCL 750.83, felon-in-possession, possession-with-intent-to-distribute, and three counts of felony-firearm. After Davis died, defendant's AWIM charge was increased to first-degree murder.

Defendant was tried in February 2024. The prosecution's theory of the case was that defendant believed Mitchell and Davis had robbed him and that he shot them in retaliation. The jury convicted defendant of all charges. Defendant was thereafter sentenced as earlier described. This appeal followed.

## II. ANALYSIS

### A. CONCESSION OF GUILT

Defendant argues that defense counsel conceded that defendant was guilty of the charged crimes, in violation of his Sixth-Amendment right to client autonomy. Defendant additionally argues that this conduct constituted ineffective assistance of counsel. We disagree.

Defendant did not raise his Sixth-Amendment right to client autonomy before the trial court; thus, the issue is unpreserved. See *People v Vaughn*, 491 Mich 642, 654; 821 NW2d 288 (2012) ("[T]he failure to assert a constitutional right ordinarily constitutes a forfeiture of that right."). "[U]npreserved constitutional errors, including structural errors, are reviewed for plain error affecting substantial rights." *People v King*, 512 Mich 1, 10; 999 NW2d 670 (2023). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

"Ordinarily, whether a defendant has been denied effective assistance of counsel is a mixed question of fact and law—the trial court's factual findings supporting its decision are reviewed for clear error, while the court's determination of whether those facts violated the defendant's right to the effective assistance of counsel is reviewed de novo." *People v Wade*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369106); slip op at 12 (quotation marks and citation omitted). Defendant preserved his ineffective-assistance claim by moving to remand for a *Ginther*[2] hearing.

---

[1] *People v Walker (On Rehearing)*, 374 Mich 331, 338; 132 NW2d 87 (1965).

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

See *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020) (stating that a defendant can preserve an ineffective-assistance claim "by filing in this Court a motion for remand to the trial court for a *Ginther* hearing"). This Court denied the motion. Thus, although the matter is preserved, "there are no factual findings to which this Court must defer, and our review is limited to errors apparent on the record." *Id.* (quotation marks and citation omitted).

Criminal defendants have a constitutional right to the assistance of counsel at all critical stages of a criminal proceeding. See US Const, Am VI. " 'Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.' " *People v Klungle*, ___, ___; ___ NW3d ___ (2024) (Docket Nos. 364125 and 367795); slip op at 3, quoting *McCoy v Louisiana*, 584 US 414, 422; 138 S Ct 1500; 200 L Ed 2d 821 (2018). However, some decisions rest solely within the defendant's discretion, including whether to plead guilty or maintain innocence. *McCoy*, 584 US at 422. Defense counsel may not override a defendant's decision to maintain their innocence by conceding guilt. *Id.* at 423. Importantly, this requirement only exists if a client "*expressly* asserts" a desire to maintain their innocence. *Klungle*, ___ Mich App at ___; slip op at 3, quoting *McCoy*, 584 US at 423 (emphasis added).

The record is silent as to whether defendant expressly informed defense counsel that he did not want to concede guilt or whether he objected to defense counsel's concession. Our review of the trial record suggests that defense counsel conceded defendant's guilt in this matter in an effort to argue to the jury that defendant should be convicted of the lesser included offense of second-degree murder, rather than first-degree premediated murder. Defense counsel conceded during his opening statement that "there's no doubt that two individuals were shot multiple times" and that there was not "any doubt as to who the shooter was." During closing argument, defense counsel repeated this concession, but went on to explain:

> I'll repeat it again just because this is the case—two of the elements of first degree murder, that they have to prove, the prosecution, beyond a reasonable doubt, the intent to kill was premeditated, that is, thought out beforehand.
>
> Next, that the killing was deliberate, which means that the Defendant considered the pros and cons of the killing and thought about and chose his actions before he did it. There must have been real and substantial reflection for long enough to give a reasonable person a chance to think twice about the intent to kill. The law does not say how much time is needed. It is for you to decide if enough time passed under the circumstances of this case. The killing cannot be the result of sudden impulse without thought or reflection.
>
> That's the case. That's the issue.
>
> Again, we talked about it during voir dire, you have to be satisfied that those elements have been proven beyond a reasonable doubt. If . . . you still have a question in the back of your mind, if that questions' [sic] reasonable . . . then you can't find [defendant] guilty of that charge, and instead, you would find him guilty of what he's acknowledged.

It is clear that defense counsel properly exercised his discretion to implement a strategy in which he argued that defendant was at most guilty of second-degree murder, rather than first-degree premeditated murder. Further, it bears repeating that defendant never asserted his innocence or expressed his disapproval of defense counsel's concession of guilt. At defendant's sentencing, defense counsel offered this allocution:

> Mr. Evans does express remorse for what he did, what happened in taking two peoples' lives. He can never do anything to get them back unfortunately, um, he killed a couple of people thinking that they were people who stole drugs from him, which as itself by definition creates a dangerous environment itself by dealing with drugs and having drugs and so forth, so for whatever it is worth he wanted to express remorse and sorrow to the family and regret. He wishes he made different decisions that day.

Immediately thereafter, the trial court invited defendant to speak. He did not dispute defense counsel's representations. Defendant was thus presented with the opportunity to protest and proclaim his innocence, but instead demurred. On this record, defense counsel did not override defendant's autonomy by disregarding his explicit intention to maintain innocence. See *McCoy*, 584 US at 424; *Klungle*, ___ Mich App at ___; slip op at 4.

Defendant additionally argues that defense counsel was ineffective for conceding defendant's guilt. "A defendant who seeks to establish a claim of ineffective assistance of counsel must show "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Counsel is presumed to be effective and defendant bears the burden of proving otherwise. *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021). Defendant likewise bears the burden to establish the factual predicate for his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

"In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52. As earlier discussed, defense counsel attempted to convince the jury to convict defendant of the lesser included offense of second-degree murder, rather than the charged offense of first-degree premediated murder. Generally, "only a complete concession of [the] defendant's guilt" rises to the level of constitutionally deficient performance. *People v Krysztopaniec*, 170 Mich App 588, 596; 429 NW2d 828 (1988). Arguing that a defendant is guilty of a lesser offense may be a legitimate trial strategy. *People v Wise*, 134 Mich App 82, 98; 351 Mich App 255 (1984); see also *People v Schultz*, 85 Mich App 527, 532; 271 NW2d 305 (1978) ("An attorney may well admit guilt of a lesser included offense in hopes that due to his candor the jury will convict of the lesser offense instead of the greater."). Defendant has presented no evidence showing that defense counsel ignored a request to maintain his innocence, nor does he explain why defense counsel's attempt to convince the jury to convict him of the lesser included offense of second-degree murder was not part of a sound trial strategy in this instance. *Trakhtenberg*, 493 Mich at 52; *Isrow*, 339 Mich App at 352. Accordingly, he is not entitled to relief.

B. SUFFICIENCY OF THE EVIDENCE

-4-

Defendant also contends that the prosecution presented insufficient evidence of premeditation to sustain his first-degree-murder convictions. We disagree.

"This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction." *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). "In analyzing these sufficiency claims, this Court must review the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Powell*, 278 Mich App 318, 320; 750 NW2d 607 (2008) (quotation marks and citation omitted). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

This Court recently reiterated the law regarding a challenge to the sufficiency of the evidence:

> In reviewing the sufficiency of the evidence, this Court must view the evidence— whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. Circumstantial evidence and any reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime. The prosecution need not negate every reasonable theory of innocence; it need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. All conflicts in the evidence must be resolved in favor of the prosecution. [*People v Johnson*, 340 Mich App 531, 548; 986 NW2d 672 (2022) (quotation marks and citation omitted).]

Here, the jury convicted defendant of two counts of first-degree murder under MCL 750.316. "The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bass*, 317 Mich App 241, 265-266; 893 NW2d 140 (2016) (quotation marks and citation omitted). Defendant maintains that the prosecution presented insufficient evidence of premeditation and deliberation.

"The Legislature did not explicitly define the meaning of premeditation and deliberation." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018). According to the plain meaning of the terms, "[t]o premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *Id.* (quotation marks and citation omitted; alteration in original). Our Supreme Court has explained that "a rigid application" of each definition "is often difficult because the same facts may tend to establish each element, and they are subjective factors usually incapable of direct proof absent an admission or confession by the defendant." *Id.* at 241.

Premeditation is absent when a defendant acts "on a sudden impulse[.]" *People v Tilley*, 405 Mich 38, 44; 273 NW2d 471 (1979) (quotation marks and citation omitted). The brutality or violence of a killing is not sufficient to establish premeditation, *People v Hoffmeister*, 394 Mich

155, 159-160; 229 NW2d 305 (1975), but "[p]remeditation and deliberation may be established by an interval of time between the initial homicidal thought and ultimate action, which would allow a reasonable person time to subject the nature of his or her action to a second look." *Oros*, 502 Mich at 242 (quotation marks and citation omitted). In other words, "some time span between the initial homicidal intent and ultimate action is necessary . . . ." *Id*. (quotation marks and citation omitted). While this time span "requires only a brief moment of thought or a matter of seconds," *id*. at 243 (quotation marks and citation omitted), "the minimum time necessary to exercise this process is incapable of exact determination . . . ." *Id*. at 242 (quotation marks and citation omitted).

Overall, "[p]remeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995). Ultimately, "it is within the province of the fact-finder to determine whether there was sufficient time for a reasonable person to subject his or her action to a second look." *Oros*, 502 Mich at 242.

Contrary to defendant's argument, the prosecution presented sufficient evidence to establish that defendant acted with premeditation and deliberation when he shot Mitchell and Davis. The parties were known to each other and lived in the same apartment complex. According to the record, defendant believed Mitchell and Davis robbed him. He thus waited in the parking lot for them to appear, shot both of them, and sped off immediately after the shooting. A 911 call pertaining to the shooting recorded two groups of gunshots with a lull between them, suggesting that defendant shot at one victim first, paused, then aimed and shot at the other. All of these facts suggest that the killing was premeditated. See *Anderson*, 209 Mich App at 537. Most critically, as this Court held in *People v Johnson*, 74 Mich App 234, 236; 253 NW2d 721 (1977), a definite pause between gun shots is sufficient to allow "a jury to infer that defendant had time for the 'second look' or reflection . . . ." Moreover, it bears noting that defendant fled to Texas after the shooting. This Court has held that "[e]vidence of flight may be used to show consciousness of guilt." *People v McGhee*, 268 Mich App 600, 613; 709 NW2d 595 (2005). Viewed in the light most favorable to the prosecution, the evidence supports the jury's finding that defendant acted with premeditation and deliberation when he killed Mitchell and Davis. Defendant's argument to the contrary lacks merit.

Affirmed.

/s/ Anica Letica
/s/ Michelle M. Rick
/s/ Mariam S. Bazzi